1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    PETRA RUSSELL,                          CASE NO. C22-0531JLR

11                        Plaintiff,          ORDER

            v.
12
      WADOT CAPITAL INC., et al.,
13
                          Defendants.
14

15              **I.    INTRODUCTION**

16       Before the court is Plaintiff Petra Russell's[1] motion for leave to file a third

17  amended complaint.  (Mot. (Dkt. # 72); Reply (Dkt. # 74); *see* Prop. TAC (Dkt. # 72-2).)

18  Defendants WADOT Capital Inc. ("WADOT"), Erik Egger, Nicole House, Steven White,

19  HMJOINT, LLC ("HMJOINT"), Michelle Chaffee, and Lisa Hallmon (collectively, the

20

21       [1] The court received notice of Ms. Russell's death while it was finalizing this order.  The
    court proceeds to decide the motion because the motion was fully briefed before the court
22  received notice of Ms. Russell's passing.  The court offers its condolences to Ms. Russell's
    family and loved ones.

ORDER - 1

"WADOT Defendants") filed an opposition to Ms. Russell's motion (Resp. (Dkt. # 73))

and a surreply in which they move the court to strike a revised version of the proposed

third amended complaint that Ms. Russell attached to her reply (Surreply (Dkt. # 76); *see*

Rev'd Prop. TAC (Dkt. # 75-1)).  The court has considered the parties' submissions, the

relevant portions of the record, and the governing law.  Being fully advised,[2] the court

GRANTS the WADOT Defendants' motion to strike and DENIES Ms. Russell's motion

to amend.

## II.    BACKGROUND

This case arises from what Ms. Russell alleges was an "exorbitantly priced

residential mortgage loan, which the lender and mortgage broker falsely mischaracterized

as a commercial loan."  (FAC (Dkt. # 1-1) ¶ 1.1.)  Ms. Russell filed her original

complaint in this matter in King County Superior Court on January 31, 2022, and

amended her complaint for the first time on March 9, 2022.  (Removal Not. (Dkt. # 1)

¶ 1; *see* FAC (Dkt. # 1-1).)  HMJOINT removed the case to this court on April 20, 2022.

(*See generally* Removal Not.)  Ms. Russell's amended complaint included 13 claims

against the Todd Lindstrom Corporation ("Capital Compete"), Todd Lindstrom, and Jane

Doe Lindstrom (together, the "Capital Compete Defendants"), the WADOT Defendants,

and NCW Trustee Services, LLC ("NCW").  (*See generally* FAC.)  Ms. Russell

purported to reserve her right to further amend her complaint to "allege any additional

---

[2] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1) and the court determines that oral argument would not be helpful in resolving the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

defenses to any foreclosure and/or causes of action that are developed during discovery

or otherwise, including causes of action for violation of . . . the Fair Housing Act." (*Id.*

at 54.)

On August 12, 2022, the court issued a scheduling order in which it set the

deadline for amending pleadings on August 30, 2023; the discovery deadline on October

30, 2023; the dispositive motions deadline on November 28, 2023; and the trial date on

February 26, 2024.  (Sched. Order (Dkt. # 20).)

On October 10, 2022, Ms. Russell moved the court for leave to further amend her

complaint to add Jared Ekdahl and National Capital Partners, Inc. (together, the "NCP

Defendants") as Defendants.[3]  (10/10/22 MTA (Dkt. # 29).)  The court granted the

motion and Ms. Russell filed her second amended complaint on October 26, 2022.

(10/25/22 Order (Dkt. # 30); SAC (Dkt. # 31).)  Ms. Russell again purported to reserve

her right to amend her complaint to add a claim for violation of the Fair Housing Act.

(SAC at 55.)

On March 23, 2023, the WADOT Defendants filed a motion for summary

judgment in which they sought dismissal of all of Ms. Russell's claims against them.  (1st

MSJ (Dkt. # 37).)  On April 6, 2023, Ms. Russell's attorney, Boris Davidovskiy, moved

the court to continue the noting date for the WADOT Defendants' motion by two weeks

due to scheduling conflicts.  (4/6/23 Mot. (Dkt. # 41).)  Despite finding that Mr.

Davidovskiy hadn't explained why he delayed filing his motion until effectively the last

---

[3] The court refers collectively to the WADOT Capital Defendants, the Capital Compete Defendants, the NCP Defendants, and NCW as "Defendants."

1   business day before his response was due, and despite concluding that Mr. Davidovskiy

2   had not shown good cause justifying an extension of time, the court granted his motion.

3   (4/6/23 Order (Dkt. # 42) at 2-3 (finding that Mr. Davidovskiy's statements "amount to

4   an admission that he simply prioritized other matters over his professional obligations to

5   Ms. Russell").)  The court continued the deadline for Ms. Russell to respond to the

6   WADOT Defendants' motion for summary judgment from April 10, 2023, to April 21,

7   2023, and admonished Mr. Davidovskiy to "be more attentive to time management and

8   comply with all deadlines set in this case, the Federal Rules of Civil Procedure, and the

9   court's Local Civil Rules." (*Id.* at 1, 3.)

10      Ms. Russell filed her response to the WADOT Defendants' motion for summary

11   judgment on April 21, 2023.  (1st MSJ Resp. (Dkt. # 43).)  Although she responded

12   substantively to the WADOT Defendants' motion, she also argued that the motion was

13   premature and asked the court for relief under Federal Rule of Civil Procedure 56(d) to

14   enable her to conduct discovery.  (*Id.* at 26-27.)  In their reply, the WADOT Defendants

15   urged the court to deny Ms. Russell's request for Rule 56(d) relief because she had not

16   yet sought discovery from any party in this action.  (1st MSJ Reply (Dkt. # 46) at 10.)  In

17   a surreply, Ms. Russell moved the court to strike the WADOT Defendants' assertion that

18   she had not sought any discovery because, by the time the WADOT Defendants filed

19   their reply, she had "already recently" served interrogatories and requests for production

20   on certain Defendants.  (1st MSJ Surreply (Dkt. # 47) at 2.)

21      The court was not persuaded that Ms. Russell's lengthy delay in beginning to

22   conduct discovery in this matter was justified.  (5/10/23 Order (Dkt. # 49) at 6-7.)

1  Nevertheless, the court granted her request for Rule 56(d) relief because the WADOT

2  Defendants had filed their motion eight months before the dispositive motions deadline.

3  (*Id.*)  The court limited its grant of Rule 56(d) relief to allowing time for the WADOT

4  Defendants to respond to the interrogatories and requests for production that Ms. Russell

5  served before the WADOT Defendants filed their reply.  (*Id.* at 7-8.)  The court instructed

6  the parties that the WADOT Defendants could renew their motion for summary judgment

7  at any time after June 30, 2023.  (*Id.* at 8.)  That same day, the court issued an order for

8  Ms. Russell to show cause why her claims against the NCP Defendants should not be

9  dismissed for failure to serve them within the 90-day timeframe set forth in Federal Rule

10  of Civil Procedure 4(m).  (5/10/23 OSC (Dkt. # 48) (noting that it had been over six

11  months since Ms. Russell added the NCP Defendants to her complaint).)  Ms. Russell

12  eventually served the NCP Defendants by mail over two months later, on July 25, 2023.

13  (8/2/23 Aff. (Dkt. # 62).)

14       The WADOT Defendants renewed their motion for summary judgment on August

15  10, 2023, again seeking dismissal of all of Ms. Russell's claims against them.  (2d MSJ

16  (Dkt. # 63).)  The motion was originally noted for consideration on September 1, 2023.

17  (*See id.* at 1.)  On August 22, 2023, shortly before Ms. Russell's response to the motion

18  was due, Mr. Davidovskiy moved the court to extend the noting date for the motion from

19  September 1, 2023, to September 29, 2023, because Ms. Russell had suffered a stroke,

20  was in a coma, and was therefore unavailable to assist him in preparing her response to

21  the WADOT Defendants' motion.  (*See* 8/22/23 Min. Order (Dkt. # 67); Mot. to Extend

22

1    (Dkt. # 68).)  The court granted Mr. Davidovskiy's motion.  (8/24/23 Order (Dkt. # 71).)

2    Thus, the WADOT Defendants' motion for summary judgment is still pending.

3          Ms. Russell filed the instant motion for leave to amend her second amended

4    complaint on August 30, 2023—the deadline the court set for amending pleadings.

5    (Mot.; *see* Sched. Order.)  She asserts that WADOT did not respond to the discovery

6    requests she served in April 2023 until July and August 2023, and that the documents

7    WADOT finally produced "revealed that Defendants violated the Fair Housing Act."

8    (Mot. at 2 (citing 8/22/23 Davidovskiy Decl. (Dkt. # 68-1)).)  She further asserts that

9    WADOT's discovery responses "for the first time revealed that WADOT had grossly and

10   materially misrepresented the subject loans to its investors" and that her "research and

11   investigation has also just now revealed that WADOT and some if not all of the other

12   defendants also violated . . . Washington law regarding distressed properties, which bars

13   equity skimming, which is at the heart of this case."  (Mot. at 3.)  The WADOT

14   Defendants filed a timely response on September 11, 2023.  (*See* Resp.)  Ms. Russell

15   filed a reply on September 15, 2023, to which she attached a revised version of her

16   proposed third amended complaint.  (*See* Reply; Rev'd Prop. TAC.)  The WADOT

17   Defendants filed their surreply and motion to strike the revised proposed third amended

18   complaint on September 18, 2023.  (*See* Surreply.)

19                          **III.   ANALYSIS**

20         Ms. Russell asks for leave to amend her complaint to add claims for violation of

21   the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, and for "equity skimming" in violation

22   of Washington's Distressed Property Conveyances Act ("DPCA"), ch. 61.34 RCW.

1    (Mot. at 2-3; *see generally* Prop. TAC.)  She further seeks to "elaborate" on the WADOT

2    Defendants' purported joint and several liability, to add allegations that WADOT "had

3    grossly and materially misrepresented [Ms. Russell's] loans to its investors for what

4    appears to be financial gain," and to incorporate an "updated report" by her retained

5    expert.  (Mot. at 3.; *see* Prop. TAC.)  The WADOT Defendants urge the court to deny the

6    motion, arguing that Ms. Russell's new claims are futile and that her motion is "an

7    improper delay tactic intended to stall disposition of WADOT's pending motion for

8    summary judgment."  (Resp. at 1.)  Below, the court sets forth the standard of review and

9    then considers Ms. Russell's proposed amendments.

10   **A.      Standard of Review**

11         Federal Rule of Civil Procedure 15(a)(2), which governs motions to amend, states

12   that "[t]he court should freely give leave [to amend the complaint] when justice so

13   requires."  Fed. R. Civ. P. 15(a)(2).  Courts consider five factors when assessing a motion

14   for leave to amend:  (1) bad faith, (2) undue delay, (3) prejudice to the opposing party,

15   (4) futility of amendment, and (5) whether the party has previously amended its pleading.

16   *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc.*

17   *v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).  In evaluating whether a delay

18   resulting from an amendment is "undue," the court inquires "whether the moving party

19   knew or should have known the facts and theories raised by the amendment in the

20   original pleading."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953

21   (9th Cir. 2006).  Moreover, futility alone justifies denying leave to amend.  *Novak v.*

22   *United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing *Bonin v. Calderon*, 59 F.3d

ORDER - 7

815, 845 (9th Cir. 1995)).  A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1245 (W.D. Wash. 2016) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

**B.    Fair Housing Act**

Ms. Russell seeks leave to amend her complaint to add a claim for violation of the FHA.  She alleges that Defendants discriminated against her on the basis of her "race, color, religion, sex, familia[l] status, national origin, or disability" by charging her a higher interest rate on the loans they issued to her in January 2018 and January 2019, "providing a different customer experience," "steering" her to loans with less favorable terms, and targeting her for "effectively fraudulent loans, which were falsely disguised as commercial."  (Prop. TAC ¶ 14.4.)  She includes in her proposed third amended complaint screenshots of emails sent by representatives of WADOT and Capital Compete in 2017 and 2018 that, she asserts, include jokes about her name, age, appearance, and national origin.  (*See id.* ¶¶ 14.5-15.)

The WADOT Defendants argue that Ms. Russell's proposed FHA claim is futile for three reasons:  (1) it is barred by the two-year statute of limitations for discrimination claims under the FHA; (2) WADOT approved Ms. Russell's loan applications and did not take any adverse actions against Ms. Russell on the basis of any protected class; and (3) Ms. Russell has not alleged that she is "disabled" within the meaning of the FHA.  (Resp. at 1-3.)  They also contend that Ms. Russell's request to amend her complaint now, while their motion for summary judgment is pending, is a delay tactic because she has known

1  about a potential FHA claim since at least March 2022, when she filed her first amended

2  complaint.  (*Id.* at 4-5.)

3  　　　The court focuses here on the WADOT Defendants' statute of limitations

4  argument.  The FHA provides, in relevant part, that "[a]n aggrieved person may

5  commence a civil action . . . not later than 2 years after the occurrence or the termination

6  of an alleged discriminatory housing practice."  42 U.S.C. § 3613(a)(1)(A).  The

7  WADOT Defendants point out that because Ms. Russell filed her original complaint on

8  January 31, 2022, the FHA's two-year statute of limitations bars claims based on

9  discriminatory conduct that occurred on or before January 31, 2020.  (Resp. at 2-3.)  Ms.

10  Russell's loans, however, originated in January 2018 and January 2019—well before

11  January 31, 2020.  (*See* Reply at 2 (acknowledging that the loans originated in January

12  2018 and January 2019).)  As a result, the WADOT Defendants assert that Ms. Russell's

13  claim that Defendants violated the FHA by discriminating against her in issuing the loans

14  is barred by the statute of limitations.  (Resp. at 2-3.)

15  　　　In her reply, Ms. Russell asserts a new legal theory behind her FHA claim.  She

16  now argues that Defendants have engaged in a continuing violation of the FHA that

17  "continued through the non-judicial foreclosure proceedings, which continued into early

18  2022."  (Reply at 2-3.)  She attaches to her reply a revised proposed third amended

19  complaint that includes new allegations that (1) Defendants induced Ms. Russell, who

20  they knew was visually impaired and unable to read fine print, to sign "documents that

21  purported to make it appear, at least on paper, that the loans were for a commercial

22  purpose, which Defendants knew was not the case" and (2) Defendants' "discriminatory

1   conduct, directly or indirectly, continued at least through Defendants' subject

2   non-foreclosure proceedings against Ms. Russell's Greenwood Home, with the most

3   recent auction being set for February 11, 2022, . . . and which further manifested in the

4   form of Defendants' failure to start the promised conventional refinance process by

5   instead initiating foreclosure proceedings with regard to the subject loan, including,

6   directly or indirectly, for the above-described discriminatory reasons violative of the

7   FHA." (Rev'd Prop. TAC ¶¶ 4.16-17.)  The WADOT Defendants ask the court to strike

8   Ms. Russell's revised proposed third amended complaint as new material that was

9   improperly attached to her reply.  (Surreply.)

10      First, the court GRANTS the WADOT Defendants' motion to strike Ms. Russell's

11   revised proposed third amended complaint.  "It is not acceptable legal practice to present

12   new evidence or new argument in a reply brief."  *Roth v. BASF Corp.*, C07-0106MJP,

13   2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008); *see also United States v. Puerta*,

14   982 F.2d 1297, 1300 n.1 (9th Cir. 1992) ("New arguments may not be introduced in a

15   reply brief."); *Bridgham-Morrison v. Nat'l Gen. Assembly Co.*, C15-0927RAJ, 2015 WL

16   12712762, at *2 (W.D. Wash. Nov. 16, 2015) ("For obvious reasons, new arguments and

17   evidence presented for the first time on Reply . . . are generally waived or ignored.").

18   Because Ms. Russell's reply and revised proposed third amended complaint include new

19   arguments and allegations that Ms. Russell did not introduce in her original motion and

20   proposed third amended complaint, the court STRIKES the revised proposed third

21   amended complaint and the allegations contained within.

22

1    Second, the court DENIES Ms. Russell's motion to amend her complaint to add a

2    claim for violation of the FHA.  The court agrees with the WADOT Defendants' position

3    that Ms. Russell's claim that Defendants discriminated against her in issuing her loans in

4    January 2018 and January 2019 is barred by the FHA's statute of limitations and that, as

5    a result, it would be futile to allow her to assert that claim in a third amended complaint.

6    **C.    DPCA**

7    Ms. Russell seeks to amend her complaint to add a violation of the DPCA as a

8    basis for a per se violation of the Washington Consumer Protection Act ("WCPA"), ch

9    19.86 RCW.[4]  (*See* Prop. TAC ¶ 15.17.)  She alleges that she is a "distressed

10    homeowner" under the DCPA, "which affords protections" regarding equity skimming;

11    that Defendants did not provide her any of the disclosures required under RCW

12    61.34.050; and that Defendants did not "afford[ her] fiduciary protections" as a distressed

13    homeowner in violation of RCW 61.34.060.  (*Id.*)  Ms. Russell does not explain why she

14    could not have alleged that Defendants had violated the DPCA in an earlier version of her

15    complaint, and she does not identify what new facts she learned through her "research

16    and investigation" that led her to seek to add these allegations at this time.  (*See generally*

17    Mot.)

18

19    _____

     [4] Under the WCPA, a private plaintiff must prove (1) an unfair or deceptive act or
     practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes

20    injury to the plaintiff's business or property; and (5) that injury is causally linked to the unfair or
     deceptive act.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533

21    (Wash. 1986).  The Legislature has declared that violations of the DPCA constitute per se
     violations of the WCPA.  RCW 61.34.040(1) (providing that the practices covered by the DPCA

22    are "matters vitally affecting the public interest" and that a violation of the DPCA "is an unfair
     method of competition for the purpose of applying" the WCPA).

The WADOT Defendants oppose Ms. Russell's request for leave to amend her complaint to add a DPCA claim.  (Resp. at 4.)  They argue that adding a DPCA claim is futile because the statute applies only where the defendant purchases a distressed homeowner's dwelling and Ms. Russell has pleaded no facts "suggesting any [D]efendant purchased or even attempted to purchase" her property.  (*Id.*)  Indeed, the DPCA defines an "act of equity skimming" as occurring when a "person purchases a dwelling" under certain circumstances and diverts value from that dwelling.  RCW 61.34.020(1); *see also* Wash. Att'y Gen. Op. 2008 No. 9, at 2-3 (Oct. 23, 2008) ("Equity skimming practices are used to obtain title to a property for the purpose of either taking the equity out of the property or obtaining rents or payments on the property without satisfying the underlying obligations that may exist, such as mortgages and existing liens."); *Mora v. MacGilvary*, 495 P.3d 850, 860-61 (Wash. Ct. App. 2021) ("One such scheme is a scenario where an individual or business approaches a homeowner on the eve of foreclosure with a promise to purchase his or her debt-encumbered home, and subsequently conveys an interest in that home.").

In her reply, Ms. Russell asks the court to liberally construe the DPCA to include within its definition of "equity skimming" the act of "offering a line of credit . . . akin to a home equity line of credit under draconian terms to the homeowner with no verified income and who otherwise cannot afford the loan for the ultimate purpose of putting the homeowner in jeopardy . . . of losing the equity in the home."  (Reply at 5.)  To support her position, Ms. Russell relies on *Jametsky v. Olsen*, in which the Washington Supreme Court rejected an interpretation of the term "at risk of loss due to nonpayment of taxes" in

the DPCA's definition of "distressed home" that would have required a certificate of tax

delinquency to trigger the statute's protections and, instead, liberally construed the term

to require a case-by-case determination of whether a property is "at risk." *Jametsky v.*

*Olsen*, 317 P.3d 1003, 1008-09 (Wash. 2014); *see id.* at 1007 (noting that the DPCA must

be construed liberally in favor of the consumers the statute aims to protect); RCW

61.34.020(2)(a) (defining "distressed home" as meaning "a dwelling that is in danger of

foreclosure or at risk of loss due to nonpayment of taxes").  Granting Ms. Russell's

request, however, would require the court to go beyond liberally construing a term in the

statute.  Instead, it would require the court to expand the reach of the statute to an entirely

new category of prohibited conduct.  It is within the purview of the Washington state

legislature, rather than of this court, to determine whether the DPCA should include

offering lines of credit to certain homeowners within its definition of equity skimming.

Because the DPCA cannot be construed to encompass the WADOT Defendants' alleged

conduct, the court concludes that Ms. Russell's proposed amendment to add a claim for

violation of the DPCA as a basis for her WCPA claim would be futile.  The court

DENIES Ms. Russell's motion to further amend her complaint to add allegations that

Defendants violated the DPCA.

**D.    Expert Opinions**

Ms. Russell seeks to incorporate by reference into her third amended complaint,

"as if fully stated herein," her expert witness's "professional opinions regarding the

subject loans."  (*See* Prop. TAC ¶ 5.98; *id.*, Exs. 32 (declaration of Randall Lowell in

support of Ms. Russell's motion for a temporary restraining order in King County

1   Superior Court), 33 (Mr. Lowell's expert report).[5])  Ms. Russell does not offer any

2   reasons for incorporating these expert opinions into her complaint rather than simply

3   using the opinions to support her case in accordance with the Federal Rules of Civil

4   Procedure and the Federal Rules of Evidence.  (*See generally* Mot.; Reply.)  Because

5   incorporating expert opinions into the complaint is inconsistent with Federal Rule of

6   Civil Procedure 8(a)'s requirement that a pleading include a "short and plain statement of

7   the claim showing that the pleader is entitled to relief," the court DENIES Ms. Russell's

8   request to incorporate her expert's declaration and report into her complaint.

9   **E.    Beneficiaries**

10          Ms. Russell asks for leave to amend her complaint to "further elaborate" on the

11  issue of whether "the Beneficiaries may be subject to WADOT's violations, including by

12  virtue of having acquired all the beneficial interest in the subject loan."  (Mot. at 3.)  The

13  Beneficiaries are Defendants Michael White, Steven White, Michele Chaffee, Lisa

14  Hallman, and HMJOINT—a subset of the WADOT Defendants who were beneficiaries

15  of the deed of trust on Ms. Russell's property.  (Prop. TAC ¶ 3.3 (adding an allegation

16  that "[a]s assignees of the subject loans WADOT made in connection with the subject

17  transactions at the heart of this action, the Beneficiaries are subject to and liable for

18  WADOT's violations.").)  In response, the WADOT Defendants note that Ms. Russell's

19  complaint already asserts joint and several liability against all Defendants in its prayer for

20

21          [5] Ms. Russell's proposed third amended complaint refers to Exhibits 31 and 32 instead of
     Exhibits 32 and 33.  (Prop. TAC ¶ 98.)  Because Exhibit 31 is a WADOT document, rather than
     an expert report, the court presumes the reference to Exhibits 31 and 32 is a typographical error.
22  (*See id.*, Ex. 31.)

1    relief.  (Resp. at 4 (citing SAC at 58-59).)  As a result, they contend that Ms. Russell's

2    proposed amendment "serves no purpose and adds nothing to the operative complaint."

3    (*Id.*)  The court agrees with the WADOT Defendants that the proposed amendment is

4    unnecessary and DENIES Ms. Russell's motion to further amend her complaint to

5    include it.

6    **F.    Misrepresentation**

7            Ms. Russell's final request is to be allowed to add an allegation that WADOT

8    "grossly misrepresented the subject loans to the Beneficiaries who acted as investors for

9    these [loans]."  (Prop. TAC ¶ 5.96.)  She also seeks to attach to her third amended

10   complaint several documents that, she asserts, substantiate these misrepresentations.  (*Id.*;

11   *see also id.* Exs. 30-32.)  Ms. Russell does not, however, explain how this allegation

12   relates to or supports any of the causes of action included in her complaint.  (*See*

13   *generally* Mot.; Reply.)  Accordingly, because this proposed amendment does not add

14   anything of substance to the complaint, the court DENIES Ms. Russell's motion to

15   amend her complaint to include the allegations in paragraph 5.96 of her proposed

16   amended complaint.

17   //

18   //

19   //

20   //

21   //

22   //

1

IV.    CONCLUSION

2          For the foregoing reasons, the court GRANTS the WADOT Defendants' motion to

3   strike (Dkt. # 76) and DENIES Ms. Russell's motion for leave to file a third amended

4   complaint (Dkt. # 72).

5          Dated this 21st day of September, 2023.

6

7

8   JAMES L. ROBART
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22