UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRIC RUSSELL,

               Plaintiff,

    v.

WADOT CAPITAL, INC., et al.,

               Defendants.

CASE NO. C22-0531JLR

ORDER

## I.    INTRODUCTION

Before the court is Defendant NCW Trustee Services LLC's ("NCW") motion for summary judgment.  (MSJ (Dkt. # 124); Reply (Dkt. # 139).)  Plaintiff Patric Russell, as administrator and successor of the estate of deceased former Plaintiff Petra Russell, opposes the motion (Resp. (Dkt. # 129)) and moves to strike portions of NCW's reply (Surreply (Dkt. # 143)).  NCW responded to Mr. Russell's surreply.  (Surreply Resp. (Dkt. # 145); 12/17/24 Order (Dkt. # 144) (authorizing response).)  The court has considered the motion, the parties' submissions, the relevant portions of the record, and

1    the governing law.  Being fully advised,[1] the court GRANTS in part Mr. Russell's

2    motion to strike and GRANTS NCW's motion for summary judgment.

3                          **II.    BACKGROUND**

4         This matter arises from two loans that Petra Russell—Mr. Russell's mother and

5    the original plaintiff in this matter—obtained from Defendant WADOT Capital, Inc.

6    ("WADOT") in 2018 and 2019.  (*See generally* 3d Am. Compl. (Dkt. # 86).)  The loans

7    were secured by separate deeds of trust on a home Ms. Russell owned in the Greenwood

8    neighborhood of Seattle, Washington (the "Greenwood Property").  (*See* 3/23/23 Egger

9    Decl. (Dkt. # 38) ¶ 19, Ex. N ("First DOT"); *id.* ¶ 27, Ex. T ("Second DOT").)  When

10   Ms. Russell defaulted on the second loan, WADOT initiated nonjudicial foreclosure

11   proceedings on behalf of a set of investors who had purchased the loan from WADOT.

12   (*See id.* ¶¶ 30, 32.)  This lawsuit followed.

13        The court set out the factual and procedural background of this matter in detail in

14   its October 9, 2024 order granting in part and denying in part the WADOT Defendants'[2]

15   motion for summary judgment (10/9/24 Order (Dkt. # 111) at 2-17) and its January 29,

16   2025 order granting the Lindstrom Defendants' and NCP Defendants'[3] motions for

17   summary judgment (1/29/25 Order (Dkt. # 153) at 2-12).  The court assumes that the

18

19        [1] Only NCW requests oral argument.  The court concludes that oral argument would not
     assist its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

20        [2] The WADOT Defendants are WADOT, Erik Egger, Nicole House, Michael White,
     Steven White, HMJOINT, LLC ("HMJOINT"), Michele Chaffee, and Lisa Hallmon.

21        [3] The Lindstrom Defendants are Todd Lindstrom, Tia Lindstrom, and Todd Lindstrom
     Corporation ("Lindstrom Corp.").  The NCP Defendants are Jared Ekdahl, Jane Doe Ekdahl, and
22   National Capital Partners ("NCP"), d/b/a Capital Compete.

1  reader is familiar with those orders and therefore focuses below on the background

2  relevant to NCW's motion for summary judgment.

3  **A.    Ms. Russell's Default**

4        In January 2019, Ms. Russell borrowed $443,000.00 from WADOT (the "Second

5  Loan") and executed a promissory note (the "Second Note") and deed of trust (the

6  "Second DOT").  The Second Note identified Ms. Russell as maker and WADOT as

7  holder.  (3/23/23 Egger Decl. ¶ 26, Ex. S ("Second Note") at 87.[4])  By signing the Second

8  Note, Ms. Russell "represent[ed] and warrant[ed]" that the loan was "being used for

9  business, investment or commercial purposes, and not for personal, family or household

10  purposes."  (*Id.* at 89.)  The Second Note was secured by the Second DOT, which

11  encumbered the Greenwood Property and identified Ms. Russell as grantor, WADOT as

12  grantee and beneficiary, and Reconveyance Professionals Inc. as trustee.  (Second DOT

13  at 90.)  The Second DOT also included a warranty that the loan it secured "was not made

14  primarily for personal, family or household purposes."  (*Id.* at 93.)

15        In January 2019, WADOT sold the Second Loan to Defendants Michael White,

16  Steven White, HMJOINT, Michelle Chaffee, and Lisa Hallmon (together, the

17  "Investors"[5]).  (3/23/23 Egger Decl. ¶ 30.)  On January 24, 2019, WADOT, "as

18  Beneficiary," executed an Assignment of Deed of Trust in which it assigned "all

19

20        [4] The court refers to the page numbers in the CM/ECF header when citing exhibits to declarations.

21        [5] In its prior orders, the court referred to the Investors as "the Beneficiaries."  In this

22  order, the court refers to them as "the Investors" to avoid confusion with the term "beneficiary" as used in the Washington Deed of Trust Act.

beneficial interest" in the Second DOT to the Investors.  (*See id.* ¶ 30, Ex. W

("Assignment"); *see* 3d Am. Compl., Ex. 15 (same).)  On January 25, 2019, WADOT

entered into Loan Servicing Agreements with the Investors.  (*See* 3d Am. Compl., Ex. 16

("House Decl.") ¶ 5.)  The Assignment was recorded on February 6, 2019.  (*Id.*)

WADOT continued to service the loan.  (3/23/23 Egger Decl. ¶ 31.)

Ms. Russell failed to pay off the balance of the Second Loan before it matured on

February 1, 2020, and made no payments thereafter.  (*Id.* ¶ 32.)  On June 13, 2020,

Defendant Nicole House, on behalf of WADOT, signed a declaration (the "House

Declaration") stating, in relevant part, that (1) the Assignment of the Second DOT from

WADOT to the Investors was recorded on February 2, 2019; (2) WADOT "is the duly

authorized servicer for [the Investors] pursuant to Loan Servicing Agreements dated

January 25, 2019[;]" (3) pursuant to the Loan Servicing Agreements, WADOT "is holder

of the original Promissory Note, Deed of Trust and any other documents in connection

with [Ms. Russell's] loan[;]" (4) WADOT "is the holder of the Note[;]" and (5) the

Second Loan was in default.  (House Decl. ¶¶ 5-7.)  Ms. House included the loan

agreement "and supporting documents," Second Note, Second DOT, and Assignment as

exhibits to her declaration.  (*See id.* ¶¶ 3-5.)

On June 15, 2020, Ms. House, on behalf of WADOT, signed a Substitution of

Trustee (the "SOT") appointing David Kazemba, an attorney at Overcast Law Offices in

Wenatchee, Washington, as trustee for the Second DOT.  (3d Am. Compl., Ex. 17

("SOT").)  The SOT identified WADOT as the "Beneficiary" and Ms. House "as

authorized agent of Beneficiary."  (*Id.*)  The SOT was recorded on June 15, 2020.  (*Id.*)

1    NCW was formed on August 14, 2020, and Mr. Kazemba became one of its

2  principals.  (Ambrose Decl. (Dkt. # 137-1) ¶¶ 5-7, Ex. 2-4 (documents regarding

3  formation and ownership of NCW).)  In October 2020, Defendant Erik Egger, on behalf

4  of WADOT, signed a Replacement and Appointment of Successor Trustee appointing

5  NCW as successor trustee (the "First RAST").  (3d Am. Compl., Ex. 18.)  The First

6  RAST identified WADOT as "Beneficiary" and Mr. Egger "as authorized agent of

7  Beneficiary[.]"  (*Id.*)  The First RAST was recorded on October 26, 2020.  (*Id.*)

8    On October 27, 2020, NCW issued a Notice of Default (the "First NOD") in which

9  it identified NCW as the "Current Trustee for the Deed of Trust" and the Investors as the

10  "Current Beneficiary of the Deed of Trust."  (3d Am. Compl., Ex. 19 at 142.[6])  The first

11  page of the First NOD includes the following language:

> This property is not known to be owner-occupied residential real property,
> therefore, the statement required under RCW 61.24.030(8)(k) does not apply.

(*Id.*)  The House Declaration was attached to the First NOD.  (*Id.* at 143.)  Mr. Kazemba

signed the First NOD on behalf of NCW.  (*Id.* at 144.)

**B.    The First Notice of Trustee's Sale**

    On March 21, 2021, the Investors, as "the present Beneficiar[ies]" of the Second

DOT, executed a second Replacement and Appointment of Successor Trustee appointing

NCW as successor trustee (the "Second RAST").  (3/23/23 Egger Decl. ¶ 33, Ex. X; *see*

*also* 3d Am. Compl., Ex. 20.)  The Second RAST was recorded on March 30, 2021.  (*Id.*)

---

[6] The court refers to the page numbers in the CM/ECF header when citing exhibits to the third amended complaint.

On April 1, 2021, NCW recorded a Notice of Trustee's Sale of Commercial Loan that set the sale of the Greenwood Property on July 30, 2021 (the "First NOTS").  (3d Am. Compl., Ex. 21.)  The First NOTS listed Ms. Russell as the grantor, the Investors as the "current beneficiary of the deed of trust," NCW as the "current trustee of deed of trust," and WADOT as the "current mortgage servicer of deed of trust."  (*Id.* at 152.)

On July 14, 2021, Ms. Russell's attorney asked Mr. Kazemba of NCW to cancel the trustee's sale due to asserted procedural defects in the foreclosure process and concerns about the Second Loan.  (12/5/24 Davidovskiy Decl. (Dkt. # 130) ¶ 2, Ex. 1.)  He argued that NCW lacked authority to issue the First NOD because it had not been properly appointed as successor trustee; that WADOT had improperly characterized the Second Loan as commercial and engaged in deceptive and unfair lending practices; and that the House Declaration was misleading and confusing.  (*Id.*)  On July 15, 2021, NCW, through Mr. Kazemba, agreed to continue the trustee's sale to August 20, 2021.  (*See* 3d Am Compl., Ex. 22 at 162-63, 160.)  On August 4, 2021, NCW agreed to cancel the trustee's sale altogether.  (*See id.* at 158.)

**C.    The Second Notice of Trustee's Sale**

In late September 2021, the Investors each executed a document titled "Beneficiary Declaration Pursuant to RCW 61.24.030(7)(a)" (the "Beneficiary Declarations").  (3/23/23 Egger Decl. ¶ 34, Ex. Y.)  The Beneficiary Declarations state that the Investors "are the actual holders" of the Second Note, "which is secured by" the Second DOT.  (*See, e.g.*, *id.* at 112.)

1    On October 4, 2021, NCW served on Ms. Russell a renewed Notice of Default

2    (the "Second NOD"). (3d Am. Compl., Ex. 26 at 189, 191.) The Second NOD identified

3    NCW as the current trustee for the Second DOT, the Investors as the current beneficiary,

4    and WADOT as the current mortgage servicer. (*Id.* at 191.) The Second NOD, like the

5    First NOD, stated that RCW 61.24.031 did not apply because the property at issue was

6    not owner-occupied. (*Id.*) The Beneficiary Declarations were attached to the Second

7    NOD. (*Id.* at 194-98.)

8    On November 5, 2021, NCW recorded a second Notice of Trustee's Sale of

9    Commercial Loan that set the sale of the Greenwood Property on February 11, 2022 (the

10   "Second NOTS"). (3d Am. Compl., Ex. 27.) The notice listed Ms. Russell as the

11   grantor, the Investors as the "current beneficiary of the deed of trust," NCW as the

12   "current trustee of deed of trust," and WADOT as the "current mortgage servicer of deed

13   of trust." (*Id.* at 200.)

14   Ms. Russell filed this case in King County Superior Court on January 31, 2022,

15   along with a motion for temporary restraining order ("TRO") seeking to enjoin the

16   trustee's sale. (*See* Compl. (Dkt. # 3-1); TRO Mot. (Dkt. # 3-8).) The court set the

17   hearing on the TRO motion on February 8, 2022. (*See* TRO Order (Dkt. # 3-33).)

18   On February 1, 2022, Ms. Russell's attorney asked NCW to unilaterally cancel the

19   February 11, 2022 trustee's sale. (12/5/24 Davidovskiy Decl. ¶ 3, Ex. 2.) On February 4,

20   2022, he sent a second request. (*Id.* ¶ 4, Ex. 3.) NCW, however, did not cancel the sale.

21   On February 8, 2022, the superior court granted Ms. Russell's TRO motion and

22   enjoined the sale of the Greenwood Property. (*See* TRO Order.) Ms. Russell amended

1    her complaint on March 9, 2022.  (*See* Am. Compl. (Dkt. # 1-1).)  On March 11, 2022,

2    the superior court granted Ms. Russell's motion for a preliminary injunction and enjoined

3    the sale until further order.  (*See* PI Order (Dkt. # 3-55).)  The preliminary injunction

4    remains in place.  (*See* 11/15/24 Order (Dkt. # 128) (denying the WADOT Defendants'

5    motion to dissolve the preliminary injunction).)

6    **D.    Proceedings in This Court**

7            HMJOINT removed the action to this court on April 20, 2022.  (*See* Not. of

8    Removal (Dkt. # 1).)  On October 26, 2022, Ms. Russell amended her complaint a second

9    time to add claims against the NCP Defendants.  (2d Am. Compl. (Dkt. # 31).)  Ms.

10   Russell passed away in September 2023.  (*See* 1/9/24 Order (Dkt. # 84) (granting Mr.

11   Russell's motion to substitute).)  In January 2024, Mr. Russell substituted in as plaintiff

12   and filed a third amended complaint.  (*See id.*; 3d Am. Compl.)

13           On October 9, 2024, the court granted in part and denied in part the WADOT

14   Defendants' third motion for summary judgment.  (*See generally* 10/9/24 Order.)  On

15   January 29, 2025, the court granted the Lindstrom Defendants' and NCP Defendants'

16   motions for summary judgment.  (*See generally* 1/29/25 Order.)  Two rulings in those

17   orders are particularly relevant to the motion now before the court.  First, the court

18   concluded, as a matter of law, that Ms. Russell's 2018 and 2019 loans were primarily for

19   business, commercial, or investment purposes, rather than primarily for personal, family,

20   or household purposes.  (10/9/24 Order at 26-35, 41-43; 1/29/25 Order at 18 n.8.)

21   Second, the court concluded, as a matter of law, that the Greenwood Property was neither

22

1   owner-occupied nor Ms. Russell's primary residence during the relevant timeframe.

2   (10/9/24 Order at 33-35, 45-48; 1/29/25 Order at 26.)

3       NCW filed its motion for summary judgment on November 13, 2024.  (MSJ.)  The

4   motion is now fully briefed and ripe for decision.

5                            **III.    ANALYSIS**

6       Mr. Russell brings claims against NCW for violations of the Washington Deed of

7   Trust Act ("DTA"), ch. 61.24 RCW, and the Washington Consumer Protection Act

8   ("WCPA"), ch. 19.86 RCW.  (3d Am. Compl. ¶¶ 7.1-7.20 (DTA), 14.1-14.22 (WCPA).)

9   Because the parties agree that NCW's alleged violations of the DTA are actionable only

10  under the WCPA (MSJ at 9; Resp. at 8), the court grants summary judgment to NCW on

11  Mr. Russell's standalone DTA claim.  *See Frias v. Asset Foreclosure Servs., Inc.*, 334

12  P.3d 529, 534 (Wash. 2014) (holding that a plaintiff has no cause of action for damages

13  under the DTA absent a completed foreclosure sale).  The court begins by addressing Mr.

14  Russell's motion to strike, then sets forth the standard of review and considers NCW's

15  motion for summary judgment on Mr. Russell's WCPA claim.

16  **A.    Motion to Strike**

17      "It is not acceptable legal practice to present new evidence or new argument in a

18  reply brief."  *Roth v. BASF Corp.*, C07-0106MJP, 2008 WL 2148803, at *3 (W.D. Wash.

19  May 21, 2008); *see also United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992)

20  ("New arguments may not be introduced in a reply brief.").  Thus, Local Civil Rule 7(g)

21  authorizes the non-moving party to "file a surreply requesting that the court strike"

22  "material contained in or attached to a reply brief."  Local Rules W.D. Wash. LCR 7(g).

1    The surreply "shall be strictly limited to addressing the request to strike."  LCR 7(g)(2).

2    "Extraneous argument . . . will not be considered."  *Id.*

3          Here, Mr. Russell asks the court to strike two "new and contradictory arguments"

4    that he asserts NCW raised for the first time in its reply—specifically, NCW's "claims"

5    that (1) "both David Kazemba and NCW, appointed by different entities, were both

6    proper trustees" (Surreply at 1), and (2) WADOT acted as the Investors' agent (*id.* at 4).

7    The court grants in part and denies in part Mr. Russell's motion to strike.  The court

8    denies Mr. Russell's request to strike NCW's argument that WADOT had authority to

9    appoint Mr. Kazemba and NCW as successor trustees because that argument directly

10    responds to Mr. Russell's argument that WADOT's appointments of Mr. Kazemba and

11    NCW were invalid.  (*Compare* Response at 11-12 (arguing that WADOT could not

12    appoint Mr Kazemba and NCW as successor trustees because it assigned the Second

13    DOT to the Investors); *with* Reply at 4-6 (arguing that WADOT was entitled to appoint

14    Mr. Kazemba and NCW as successor trustees because it was the holder of the Second

15    Note).)  However, the court grants Mr. Russell's request to strike NCW's argument that

16    WADOT was acting as the Investors' agent because that argument was not raised in

17    NCW's motion or in Mr. Russell's response.  (*See generally* MSJ; Resp.)  In accordance

18    with Local Civil Rule 7(g)(2), the court does not consider the extraneous substantive

19    arguments in Mr. Russell's surreply or NCW's response thereto in deciding the motion

20    for summary judgment.

21

22

1    **B.    Summary Judgment Standard of Review**

2          Summary judgment is appropriate if the evidence viewed in the light most

3    favorable to the non-moving party shows "that there is no genuine dispute as to any

4    material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5    56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when,

6    under the governing substantive law, it could affect the outcome of the case. *Anderson v.*

7    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists

8    when "the evidence is such that a reasonable jury could return a verdict for the

9    nonmoving party." *Id*. "Disputes over irrelevant or unnecessary facts will not preclude a

10   grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

11   F.2d 626, 630 (9th Cir. 1987).

12         To carry its burden, "the moving party must either produce evidence negating an

13   essential element of the nonmoving party's claim or defense or show that the nonmoving

14   party does not have enough evidence of an essential element to carry its ultimate burden

15   of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015)

16   (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir.

17   2000)). If the moving party meets its burden of production, the burden then shifts to the

18   nonmoving party to identify specific facts from which a factfinder could reasonably find

19   in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

20   "This burden is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th

21   Cir. 2010). The party opposing the motion for summary judgment "must do more than

22   simply show that there is some metaphysical doubt as to the material facts." *Scott v.*

1 | *Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

2 | *Corp.*, 475 U.S. 574, 586 (1986)).  A "party asserting that a fact cannot be or is genuinely

3 | disputed must support the assertion by . . . citing to particular parts of materials in the

4 | record[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also* Local Rules W.D. Wash. LCR 10(e)(6)

5 | ("Citations to documents already in the record . . . must include a citation to the docket

6 | number and the page number[.]").

7 | The court is "required to view the facts and draw reasonable inferences in the light

8 | most favorable to the [nonmoving] party." *Scott*, 550 U.S. at 378 (internal quotations

9 | omitted).  It may not weigh evidence or make credibility determinations.  *Anderson*, 477

10 | U.S. at 249-50.  "Where the record taken as a whole could not lead a rational trier of fact

11 | to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at

12 | 380 (quoting *Matsushita*, 475 U.S. at 587).

13 | **C.    WCPA Claims**

14 | WCPA claims based on violations of the DTA are governed by the same

15 | principles that apply to all WCPA claims.  *Frias*, 334 P.3d at 539.  To succeed on a

16 | WCPA claim, the plaintiff "must establish (1) an unfair or deceptive act (2) in trade or

17 | commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her

18 | business or property, and (5) a causal link between the unfair or deceptive act complained

19 | of and the injury suffered." *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1107 (Wash.

20 | 2015) (citations omitted); *see Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*

21 | *Co.*, 719 P.2d 531, 535 (Wash. 1986); RCW 19.86.020.  A WCPA claim "may be

22 | predicated upon a per se violation of statute, an act or practice that has the capacity to

1    deceive substantial portions of the public, or an unfair or deceptive act or practice not

2    regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 295

3    P.3d 1179, 1187 (Wash. 2013).  The legislature has not declared that violations of the

4    relevant portions of the DTA constitute per se unfair or deceptive acts or practices.  *See*

5    *id.* at 1186.  Therefore, to survive summary judgment, Mr. Russell must demonstrate a

6    genuine dispute of material fact as to whether NCW engaged in an act or practice that has

7    the capacity to deceive substantial portions of the public or that violates the public

8    interest.  *Id.* at 1187.  Proof of a technical violation of the DTA, alone, is not enough to

9    establish an unfair or deceptive act or practice.  *Meyer v. U.S. Bank Nat. Ass'n*, 530 B.R.

10   767, 780 (Bankr. W.D. Wash. 2015), *aff'd sub nom. Meyer v. Nw. Tr. Servs. Inc.*, 712 F.

11   App'x 619 (9th Cir. 2017).

12        NCW asserts that Mr. Russell's WCPA claims must be dismissed because it was

13   entitled to rely on the House Declaration as proof that WADOT was the holder of the

14   note and there is no evidence that NCW engaged in an unfair or deceptive act or practice.

15   (*See generally* MSJ.)  Mr. Russell counters that NCW violated the WCPA by

16   (1) improperly issuing the First NOD because WADOT lacked authority to appoint NCW

17   as successor trustee (Resp. at 11-12); (2) improperly relying on the House Declaration as

18   "proof that the beneficiary is the owner of" the First Note before recording the First

19   NOTS, in violation of RCW 61.24.030(7)(a) (*id.* at 12-13); and (3) deferring to

20   WADOT's instructions to proceed with the second trustee's sale in violation of its duty of

21   good faith under RCW 61.24.010(4) (*id.* at 16-18).  The court considers each of Mr.

22   Russell's arguments in turn.

1          1.    First Notice of Default

2          Mr. Russell asserts that NCW improperly issued the first NOD because WADOT

3    was not authorized to appoint NCW as successor trustee.  (Resp. at 11-12.)  The court

4    disagrees.  Under the DTA, the beneficiary of a deed of trust is the *holder* of the

5    promissory note secured by the deed of trust, rather than the *owner* of the note.  Brown v.

6    *Wash. State Dep't of Com.*, 359 P.3d 771, 787 (Wash. 2015) (concluding that a loan

7    servicer was the DTA beneficiary because it was the holder of the note, even though

8    another entity owned the beneficial interest); RCW 61.24.005(2) (defining "beneficiary"

9    under the DTA).[7]  The DTA beneficiary "has the power to appoint a successor trustee

10   and to instruct the trustee to initiate nonjudicial foreclosure."  *Blair v. Nw. Tr. Servs., Inc.*,

11   372 P.3d 127, 134 (Wash. Ct. App. 2016).

12         Here, WADOT was the original beneficiary of the Second DOT and holder of the

13   Second Note.  (*See* Second DOT; Second Note.)  In January 2019, WADOT sold the

14   Second Loan to the Investors, but continued to hold the promissory note.  (*See* 3/23/23

15   Egger Decl. ¶ 30; Assignment (assigning the Second DOT to the Investors, but saying

16   nothing about the Second Note); House Decl. ¶ 5 (stating that WADOT was still the

17   holder of the original promissory note pursuant to the Loan Servicing Agreements with

18

19          [7] As this court has explained, "[a]lthough the initial lender is both the owner of the note
20   (the party with the beneficial interest who is entitled to the payments on the note and/or the
     proceeds of a foreclosure sale) and the holder of the note (the statutory beneficiary entitled to
     enforce the note, foreclose, and negotiate modifications), those rights are often separated when
21   the lender sells the note on the secondary market."  *Lake v. MTGLQ Invs., L.P.*, No.
     C17-0495JLR, 2017 WL 3839590, at *4 (W.D. Wash. Sept. 1, 2017), *aff'd sub nom. Lake v.*
22   *Premier Fin. Servs. Inc.*, 719 F. App'x 678 (9th Cir. 2018)

1    the Investors).)  Mr. Russell presents no contradictory evidence that WADOT was *not* the

2    holder of the Second Note during the relevant time period.  (*See generally* Resp.)

3    Because WADOT was the holder of the Second Note, it was the beneficiary of that note

4    under the DTA and empowered to appoint a successor trustee.  *See Brown*, 359 P.3d at

5    787.  Therefore, the court concludes that there is no genuine dispute of material fact that

6    WADOT was authorized to appoint Mr. Kazemba, and then NCW, as successor trustees.

7            Mr. Russell argues that WADOT's appointments of Mr. Kazemba and NCW as

8    successor trustees were invalid because WADOT was no longer the beneficiary of the

9    Second Note after it assigned the Second DOT to the Investors.  (Resp. at 11.)  As noted

10   above, however, whether an entity is the beneficiary under the DTA depends on whether

11   that entity is the holder of the note, even when another entity owns the beneficial interest.

12   Thus, because WADOT continued to hold the note, it remained the DTA beneficiary,

13   even after it sold the beneficial interest in the note to the Investors.  Accordingly, the

14   court grants NCW's motion for summary judgment on Mr. Russell's WCPA claim based

15   on the allegedly improper appointment of NCW as successor trustee.

16           2.      First Notice of Trustee's Sale

17           The DTA sets forth the requisites for a trustee's sale in RCW 61.24.030.  At issue

18   here is subsection (7), which provides:

19                   (a) That, for residential real property . . . before the notice of trustee's
                 sale is recorded, transmitted, or served, the trustee shall have proof that the
20               beneficiary is the holder of any promissory note or other obligation secured
                 by the deed of trust.  A declaration by the beneficiary made under the penalty
21               of perjury stating that the beneficiary is the holder of any promissory note or
                 other obligation secured by the deed of trust shall be sufficient proof as
22               required under this subsection.

(b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.

RCW 61.24.030(7)(a)-(b).  "[A] trustee can rely on a declaration consistent with its duty of good faith if the declaration unambiguously states the beneficiary is the actual holder." *Brown*, 359 P.3d at 786.

Here, Mr. Russell does not argue that NCW breached its duty of good faith with respect to the First NOTS.  (*See generally* Resp.)  Instead, he argues that NCW violated the DTA by relying on the House Declaration as proof that WADOT was the "owner" of the Second Note.  (*Id.* at 12-13.)  Again, the court disagrees with Mr. Russell.

At the outset, the court notes that Mr. Russell repeatedly argues that the trustee must have proof that the beneficiary was the "owner" of the promissory note under RCW 61.24.030(7)(a).  (*See, e.g.*, Resp. at 9-10.)  As discussed above, however, the holder of the note is the DTA beneficiary with power to foreclose, even if it does not own the note. *Brown*, 359 P.3d at 787.  In addition, in 2018, the Washington legislature amended RCW 61.24.030(7)(a) to replace the word "owner" with "holder."  *See Winters v. Quality Loan Serv. Corp. of Wash., Inc.*, 454 P.3d 896, 905 n.6 (Wash. Ct. App. 2019) (so noting).  Thus, Mr. Russell's argument that the First NOTS is invalid because NCW did not prove that WADOT "owned" the Second Note fails.

Furthermore, NCW was entitled to rely on the House Declaration because Mr. Russell does not assert bad faith in connection with the First NOTS and the House Declaration is not ambiguous.  In *Trujillo v. Northwest Trustee Services, Inc.*, the

Washington Supreme Court concluded that a beneficiary declaration that stated, in relevant part, that the beneficiary "is the actual holder of the promissory note . . . or has requisite authority" to enforce the obligation was ambiguous because the declarant "could be the 'actual holder' 'or' it could be something else." 355 P.3d at 1106. As a result, the plaintiff's allegation that the successor trustee relied on that declaration to prove that the beneficiary was the holder of the note was sufficient to state a claim for violation of the DTA. *Id.* at 1107. In contrast, in *Brown v. Washington State Department of Commerce*, the Court concluded that a beneficiary declaration that stated that "[the servicer] is the actual holder of the promissory note" was unambiguous. *Brown*, 359 P.3d at 786-87.

Here, the House Declaration states that WADOT is (1) "the holder of the original Promissory Note, Deed of Trust, and any other documents in connection with Borrower's loan[;]" and (2) "the holder of the Note." (House Decl. ¶¶ 5-6.) These statements are unambiguous because they do not leave open the possibility that some source of authority other than possession of the note empowered WADOT to enforce the note. Thus, NCW was entitled to rely on the House Declaration when it scheduled the first trustee's sale. *See Brown*, 359 P.3d at 786. Accordingly, the court grants summary judgment in NCW's favor on Mr. Russell's WCPA claim arising from NCW's allegedly improper reliance on the House Declaration.

### 3.    Second Notice of Trustee's Sale

"The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4). To comply with this duty of good faith, a trustee "must adequately inform itself regarding the purported beneficiary's right to

1    foreclose, including, at a minimum, a cursory investigation." *Lyons v. U.S. Bank Nat'l*

2    *Ass'n*, 336 P.3d 1142, 1149 (Wash. 2014) (cleaned up).  A trustee "must treat both sides

3    equally and investigate possible issues using its independent judgment to adhere to its

4    duty of good faith." *Id.*  A trustee's practice of "deferring to the lender on whether to

5    postpone a foreclosure sale and thereby failing to exercise its independent discretion as

6    an impartial third party with duties to both parties is an unfair or deceptive act or practice

7    and satisfies the first element of the [WCPA]." *Klem*, 295 P.3d at 1190.  The trustee,

8    however, "does not need to summarily accept a borrower's side of the story or instantly

9    submit to a borrower's demands." *Lyons*, 336 P.3d at 1149.

10          Two cases in which the Washington Supreme Court found violations of the DTA's

11   duty of good faith are instructive.  In *Klem v. Washington Mutual Bank*, the Court

12   concluded that a trustee violated its duty of good faith where it had an express agreement

13   with the lender that it would not delay a trustee's sale absent the lender's express

14   direction, deferred to the lender on whether to postpone a trustee's sale, and ignored

15   numerous requests by the borrower's guardian to postpone the sale to allow the guardian

16   time to sell the property and pay off the debt.  295 P.3d at 1181, 1182-83, 1189-90.  In

17   *Lyons v. U.S. Bank National Association*, the Court found that a trustee violated its duty

18   of good faith when it deferred to the lender and ignored the borrower's protests that she

19   was no longer in default because she had obtained a loan modification.  336 P.3d at 1149.

20          Here, Mr. Russell argues that NCW breached its duty of good faith to Ms. Russell

21   by "deferr[ing] entirely to WADOT's instructions regarding foreclosure on Ms. Russell's

22   home, despite being presented with substantial evidence of irregularities,

ORDER - 18

1    misrepresentations, and statutory violations in the underlying loan and foreclosure

2    process." (Resp. at 16.)  He asserts that NCW was on notice of alleged defects in the

3    loan and foreclosure process as early as July 2021, when Ms. Russell's attorney asked

4    NCW to cancel the first trustee's sale, and he notes that NCW also received a copy of

5    Ms. Russell's January 2022 complaint.  (*Id.*)  Nevertheless, according to Mr. Russell,

6    NCW "took no action to investigate the issues [with Ms. Russell's loan] by, at a

7    minimum, continuing the second foreclos[ure] sale[,]" and instead "rel[ied] entirely on

8    WADOT's representations and instructions[.]"  (*Id.* at 17.)

9        Mr. Russell does not, however, present any evidence, as opposed to speculation,

10    that NCW engaged in bad-faith conduct when it declined to cancel the second trustee's

11    sale.  (*See generally* Resp.)  For example, Mr. Russell does not identify evidence that

12    NCW had an express agreement with WADOT not to delay the trustee's sale or that it

13    ignored her attorney's concerns when he raised them.  (*See id.*)  Mr. Russell also does not

14    argue that there were procedural improprieties in the Second NOD and Second NOTS.

15    (*Id.*)  Furthermore, the court has concluded, as a matter of law, that Ms. Russell's loans

16    were not for a personal purpose and that the Greenwood Property was neither

17    owner-occupied nor Ms. Russell's primary residence.  (10/9/24 Order at 26-35, 41-43,

18    45-48.)  As noted above, a trustee need not "summarily accept a borrower's side of the

19    story or instantly submit to a borrower's demands."  *Lyons*, 336 P.3d at 1149.  The court

20    concludes that a reasonable juror faced with this record could not find that NCW violated

21    its duty of good faith to Ms. Russell.  Therefore, the court grants NCW's motion for

22

1   summary judgment on Mr. Russell's WCPA claim arising from NCW's alleged failure to

2   act in good faith with respect to the second trustee's sale.

3                          **IV.    CONCLUSION**

4           For the foregoing reasons, the court GRANTS in part Mr. Russell's motion to

5   strike (Dkt. # 143) and GRANTS NCW's motion for summary judgment (Dkt. # 124).

6   The court DISMISSES with prejudice Mr. Russell's claims against NCW for violations

7   of the Deed of Trust Act and the Washington Consumer Protection Act.

8           With this order, the court has now dismissed all of Mr. Russell's substantive

9   claims in this action.  (*See* Dkt. ## 111, 153.)  Therefore, the court ORDERS as follows:

10          1.      The March 10, 2025 trial date and remaining pretrial deadlines are

11  VACATED (see 1/24/24 Order (Dkt. # 87));

12          2.      The motions *in limine* filed by NCW (Dkt. # 148), the WADOT Defendants

13  (Dkt. # 149), and Mr. Russell (Dkt. # 150) are STRICKEN as moot; and

14          3.      The Declaratory Judgment Act "creates only a remedy, not a cause of

15  action." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013).  In

16  other words, a plaintiff cannot pursue a claim for declaratory relief absent an underlying

17  claim.  *Id.* at 1140.  Accordingly, Mr. Russell shall show cause, by no later than

18  **February 21, 2025**, why the court should not dismiss his requests for declaratory relief

19  //

20  //

21  //

22  //

ORDER - 20

now that all of his substantive claims have been dismissed.  Defendants may file optional

responses by no later than **February 28, 2025**.

Dated this 5th day of February, 2025.

JAMES L. ROBART
United States District Judge